5516

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3029 | **DATE** | 2/24/2004 |
| **CASE TITLE** | | Donald Rohan vs. Jo Anne B. Barnhart | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Enter Memorandum Opinion and Order. The Court enters judgment for Plaintiff and grants Plaintiff's motion for summary judgment [13-1] and remand [13-2], denies the Commissioner's motion for remand [20-1], and awards Plaintiff $5,802.50 in fees pursuant to the Equal Access to Justice Act. The case is reversed and remanded to the Commissioner for the award of disability benefits to Plaintiff, Donald Rohan, for the period from 10/25/89 to 03/29/92.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 5 2004 | 25 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/24/2004 | |
| DK | courtroom deputy's initials | | date mailed notice | |
| | | | DK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DONALD ROHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03 C 3029 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

FEB 2 5 2004

## MEMORANDUM OPINION AND ORDER

After eleven years, it is time to bring this litigation to an end. This case comes before this Court on three motions. The first is a motion for summary judgment filed by Plaintiff Donald Rohan ("Plaintiff"), seeking reversal of the Administrative Law Judge's ("ALJ") finding of not disabled for the period from June 30, 1989 to March 29, 1992. The second is a motion for remand filed by Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), seeking to give the ALJ another opportunity to comply with the Seventh Circuit's and this Court's prior remand orders. The third is a request for fees, filed by Plaintiff, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

There are two primary issues. First, whether the onset date of Plaintiff's disability is March 30, 1992. Second, whether remand to the Commissioner for further proceedings is proper, considering the inordinate number of years Plaintiff's application for disability insurance benefits ("DIB") has been pending and the actions of the Social Security

25

Administration ("SSA") during that time. For the following reasons, the Court enters judgment for Plaintiff, denies the Commissioner's motion for remand, and awards Plaintiff $5,802.50 in fees under the EAJA.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

#### 1. The First Proceeding

Plaintiff, who alleges low back pain secondary to a herniated disc and Major Depressive Disorder, filed an application for DIB on August 10, 1992, claiming a disability from June 30, 1989. R. 54-56. The application was denied initially and upon reconsideration. R. 67-76. Plaintiff filed a timely request for an administrative hearing, which ALJ James A. Horn held on February 2, 1994. R. 77-79, 268-315. On June 23, 1994, ALJ Horn issued an unfavorable decision, denying Plaintiff any benefits and finding no period of disability. R. 12-24. Plaintiff's request for review to the Appeals Council was denied on October 27, 1994, because, *inter alia*, the contentions raised by Plaintiff to the Appeals Council were repetitive of those previously submitted to the ALJ and addressed in the decision. R. 5-6.

Plaintiff then filed a complaint in the district court requesting judicial review of the Commissioner's decision, and the parties filed cross-motions for summary judgment, which resulted in a decision against Plaintiff on January 16, 1996. *Rohan v. Chater*, No. 95 C 0001, 1996 WL 19583 (N.D. Ill. Jan. 16, 1996). After the court denied Plaintiff's motion to alter

2

or amend the judgment, Plaintiff appealed the decision to the Seventh Circuit Court of Appeals, which remanded the case for further proceedings consistent with its order. *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996).

The Seventh Circuit criticized the ALJ for committing a number of errors. *Id.* at 970-71. For instance, the ALJ improperly disregarded the most current objective evidence of Plaintiff's limitations submitted by psychiatrist Dr. Michael S. Shapiro. *Id.* at 970. The ALJ also improperly substituted his judgment for that of Dr. Shapiro by indulging his own lay view of depression. *Id.* The court found that the ALJ impermissibly relied upon Plaintiff's efforts at engaging in a small machine repair/resale business as being inconsistent with a diagnosis of major depression and limited functional abilities. *Id.* Because of these errors, the court recommended that the case be assigned to a different ALJ on remand. *Id.* at 971.

## 2. The Second Proceeding

Pursuant to the Seventh Circuit's order, the Appeals Council remanded the case to ALJ John L. Mondi to give further consideration to treating sources. R. 445-48. ALJ Mondi held a new hearing on March 18, 1999. R. 359-444. At that hearing, the Medical Expert, Dr. Richard Zaloudek, testified that Plaintiff did have a severe mental impairment, but could not comment about whether the onset date was anytime between June 1989 and March 1992 because he had no notes pertaining to that period. R. 419, 421. Additionally, the Vocational Expert, Lee Knutson, testified that the combination of mental and physical impairments suffered by Plaintiff would prevent him from being employable. R. 430, 432. Based on this

3

record, the ALJ issued a partially favorable decision on June 28, 1999, awarding Plaintiff DIB from March 30, 1992 to October 31, 1997. R. 339-55. The ALJ set the onset date of Plaintiff's disability to reflect the date Plaintiff was first diagnosed by his psychiatrist. R. 352. Plaintiff appealed the unfavorable portion of the decision, contending that Plaintiff's onset date was June 30, 1989. R. 337-38. He also submitted a memorandum of exceptions and requested the Appeals Council to take jurisdiction over the case. R. 316-25.

In the memorandum of exceptions, which was filed without the benefit of the hearing tapes that had been requested almost a year before, Plaintiff made the Appeals Council aware of several errors committed by the ALJ. R. 317, 320-25. Among the errors was that the ALJ arbitrarily chose the onset date as the date Plaintiff first saw his psychiatrist, that the ALJ ignored medical evidence explicitly contrary to his decision, and that the ALJ dissected reports to obtain minor snippets of evidence contrary to Plaintiff's position while ignoring the remainder of the evidence that supported Plaintiff's position. R. 321, 323. Nonetheless, the Appeals Council did not take jurisdiction over the case, and Plaintiff filed a Complaint with this Court on February 9, 2001.

On January 7, 2002, pursuant to an agreed motion, this Court reversed the Commissioner's final decision and remanded the case for further administrative proceedings. This Court ordered the ALJ to conduct a *de novo* review and issue a new decision considering Plaintiff's impairments as a whole with respect to the period from Plaintiff's alleged onset date, June 30, 1989, through March 29, 1992. The ALJ also was directed to

4

consult a mental health professional to assist in determining Plaintiff's disability onset date and to consider all new and old evidence of record, specifically the opinion of Dr. Shapiro and the testimony of Plaintiff's wife, to determine whether Plaintiff's mental impairment might have become disabling prior to March 29, 1992.

### 3. The Third Proceeding

The Appeals Council remanded the case to ALJ Mondi for *de novo* review of the period from June 30, 1989 through March 29, 1992. R. 555-57. The ALJ held a hearing on October 2, 2002. R. 582-655. On February 27, 2003, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled prior to March 29, 1992. R. 544-54. The ALJ's decision became the final decision of the Commissioner, and Plaintiff filed a Complaint with this Court on May 6, 2003, requesting reversal of the Commissioner's decision, or alternatively remand, as well as an award of attorney's fees under the EAJA.

On October 20, 2003, Plaintiff filed a motion for summary judgment. In response, the Commissioner filed a motion for remand. The Commissioner proposes that, on remand, the ALJ will reconsider Plaintiff's onset date of disability. In doing so, the ALJ will address the opinion of Dr. Shapiro and the testimony of Plaintiff's wife, and consult a medical expert, if necessary. Plaintiff objects, arguing that after eleven years the record is complete and nothing new can be achieved on remand because only one result, the award of benefits, is possible.

## B.    HEARING TESTIMONY

### 1.    Plaintiff's Testimony

Plaintiff was fifty-five years old at the time of the ALJ's decision, had completed high school, had served in the Army, and is married with three children. R. 54, 87, 97, 282-83, 370. He injured his back on June 17, 1989, while shoveling sand as part of his duties doing carpentry work. R. 101-06, 134. He immediately experienced pain in his back and right leg, but continued to work. R. 134, 290. By June 30, 1989, the pain was so extreme that Plaintiff could not work. R. 128. He did not return to work again until 1996. R. 376.

Plaintiff went to the emergency room on July 4, 1989, complaining of pain in his right leg and lower back. R. 128. Early degenerative changes in the lower lumbar spine were noted. R. 129. He was restricted to bed rest and stopped working. R. 83, 128, 272. At that time, Plaintiff did not go to a Veterans Administration hospital for treatment of his injuries because he had been told that the hospital would only treat war-related injuries. R. 280, 386. Additionally, at one point Plaintiff did not see a doctor for treatment of his back for a few years because he could not afford treatment until he began receiving public aid in 1993. R. 278. During that time, he continued to rest and to take over-the-counter medicine. R. 277, 291. However, he could not do simple chores, such as washing the dishes, and he spent about four or five hours a day in a recliner. R. 287. He ceased repairing and building cars, as well as doing woodworking, and could not concentrate for more than fifteen to thirty minutes. R. 288-89. Since 1989, his back pain has been constant. R. 615. There was no

time when his back pain first started that the pain subsided, and the pain was so bad that his wife had to help him out of the bathtub because he could not lift his legs over the side of the tub. R. 114-17, 611, 613. In July 1989, he realized that he would never go back to his old lifestyle as a carpenter. R. 642. As a result, he gained about ninety pounds since his injury, currently weighing in at about 365 pounds. R. 640.

By September 11, 1990, Plaintiff complained of extreme back pain that prevented him from bending, lifting, sitting, and standing or walking for more than thirty to forty-five minutes at a time. R. 83, 86, 88. On February 5, 1991, Plaintiff reported that he experienced back pain twenty-four hours a day and that he could sit only for very short periods of time. R. 108, 110-11. The pain and depression made it difficult for Plaintiff to remember, to concentrate, and to sleep. R. 115-16. He became irritated when someone told him what to do or criticized him. R. 116. His mood changed for the worse after the injury. R. 391, 614.

In March 1992, Plaintiff went to see a psychiatrist at his wife's urging. R. 298. Because he had become suicidal and so emotionally unstable, his wife told him that he needed to get help or she would divorce him. *Id.* When he saw the psychiatrist for the first time, he had thoughts of guilt, worthlessness, and death. R. 644-45. The psychiatrist prescribed Prozac, which seemed to help Plaintiff stabilize his emotions. R. 295. Plaintiff claims that, as of 1989, his pain was severe enough to require psychiatric treatment. R. 644.

At about the same time, in an attempt to keep himself occupied, Plaintiff began repairing small motors. R. 238, 375, 603-04. He either received or purchased lawn mowers

and a tractor to repair in May 1992. R. 603-04. Plaintiff asserts that he was not running a business and that he did not do repairs on a daily basis because of his leg and back problems. R. 602, 607. He would sit or lay down to do the repairs, and often he would have to take breaks. R. 392-93, 605-07. Most of the machinery was scrapped because it would take him six hours with breaks to do one repair that an average mechanic could do in a third of the time. R. 606. He became frustrated that simple tasks took hours and that he could not pick items up off the floor. R. 607, 641.

### 2. Susan Rohan - Plaintiff's Wife

Susan Rohan ("Mrs. Rohan"), Plaintiff's wife, testified that Plaintiff's back condition gradually grew worse since his injury in 1989. R. 305. After his injury, Plaintiff often was irritable, depressed, and moody, had difficulty concentrating, sleeping, and relating to others, and could not lift or carry much weight. R. 305-09, 390-91. These problems began about three months after Plaintiff stopped working in June 1989. R. 622.

Within three or four months of Plaintiff's injury, Plaintiff became depressed and irritable. R. 622. Plaintiff became paranoid and began talking about his experiences in Vietnam, which he had not mentioned in years. R. 309. Plaintiff did not undergo psychiatric treatment until after Mrs. Rohan gave him an ultimatum that if he did not see a psychiatrist she would move out. R. 622-23. She made the ultimatum because Plaintiff's condition had been building gradually for a long time until the situation was desperate. *Id.* Friends stopped visiting because of Plaintiff's attitude. R. 623.

Mrs. Rohan also testified that Plaintiff was physically exhausted by a work hardening program he underwent in 1990 and that the program made his pain worse. R. 624-27. After the sessions, Plaintiff would sleep for the rest of the day and could do no more than ten to thirty minutes of physical activity with many breaks. *Id.* He became more frustrated because he could not do simple tasks. R. 625. After the work hardening program ended, Plaintiff did not continue to receive treatment for his back because his doctor told him that nothing could be done for it. R. 308.

Finally, Mrs. Rohan testified that Plaintiff could not accomplish anything, especially when he attempted to fix lawn mowers. R. 626. Plaintiff constantly would start and stop his attempts at repairs, becoming frustrated when things would not go his way and going to bed after about half-an-hour of work. *Id.*

### 3.    Irwin Feinberg, M.D. - Medical Expert

Dr. Irwin Feinberg, an orthopaedic specialist, testified at the hearing as Plaintiff's medical expert. R. 628-46. He gave an opinion as to Plaintiff's residual functional capacity from 1989 to 1992. R. 635. Plaintiff occasionally could lift ten to fifteen pounds, frequently could lift less than ten pounds, experienced more pain the longer he stood on his feet or lifted with his back, could stand or walk less than two hours and sit less than six hours in an eight-hour workday, could pull or push with his legs, was limited on his postural positions, and could not climb. R. 635-36. He opined that Plaintiff had met Listing 1.04(c) since November 20, 1990, or earlier. R. 628-31. Dr. Feinberg also stated that Plaintiff's

9

complaints of pain during the 1990 work hardening program were consistent with his impairments, which were evidenced by doctors' reports and an MRI. R. 630-33, 635-37. Specifically, Plaintiff's lumbrosacral x-rays taken July 4, 1989, showed the first stages of disc degeneration that could cause pain. R. 632. Finally, because Plaintiff's obesity made surgery dangerous, Dr. Feinberg rejected the notion that Plaintiff's refusal to have back surgery in 1989 was unreasonable and an indication of a lack of severe pain. R. 634-35.

### 4. Demetri Dres, Psy.D - Medical Expert

Dr. Demetri Dres, a psychologist, testified as a medical expert. R. 574-76, 646-51. He did not examine Plaintiff but rather consulted the medical evidence and Plaintiff's initial psychological evaluation conducted in March 1992 by Plaintiff's psychiatrist. R. 646. Dr. Dres could not determine when Plaintiff's depression began, but he did determine that Plaintiff's psychological symptoms were progressive and that the criteria for Listing 12.04 was met in March 1992. R. 638, 647. His basis for that onset date was that it was the date Plaintiff first visited his psychiatrist. R. 647. Whether, prior to March 1992, the Listing was met or Plaintiff's disabling mental impairments were onset is indeterminable with the record. R. 647-48. However, based upon the medical evidence and the testimony, Dr. Dres opined that Plaintiff's mental impairment likely began on October 25, 1989, while being treated by Dr. Scott Mox. R. 648-50.

## C.     MEDICAL EVIDENCE

### 1.     Treating Physicians

Plaintiff first sought treatment for his back injury on July 10, 1989, when he visited Scott Mox, M.D., who assessed a lumbosacral strain and severe sciatica. R. 144, 214. An MRI showed a large herniated disc, disc protrusions, and disc degeneration. R. 145. Although surgery was an option, Dr. Mox conservatively treated Plaintiff's condition and physically examined him each month from July to December. R. 141-43, 256. Dr. Mox prescribed bed rest, narcotic pain medication, and physical therapy, which Plaintiff attended from July to September of 1989. R. 144, 214, 273. By the end of December 1989, Plaintiff had not improved and could not return to work. R. 141.

On January 22, 1990, Thomas W. McNeill, M.D., examined Plaintiff in connection with Plaintiff's workers compensation claim and found that the Plaintiff had difficulty dressing, had a herniated disc with recovery of sciatica, and that the straight leg raising test was positive on the right. R. 214-15. Although Plaintiff was at risk doing heavy work and could extrude the herniated disc, Dr. McNeill recommended that Plaintiff enroll in a work hardening program, which Plaintiff did in June and July of 1990 and put forth maximal effort. R. 149-52, 215.

The work hardening program results showed that Plaintiff could do only light work. R. 149-52. Other results show that Plaintiff's ability to stand significantly decreased, his squatting tolerance slightly increased, his kneeling tolerance slightly decreased, his walking

endurance moderately improved, and his ability to perform a lift and carry remained unchanged at thirty-three pounds. R. 150-51.

### 2.    Michael S. Shapiro, M.D. - Treating Psychiatrist

On March 30, 1992, Plaintiff visited psychiatrist Dr. Michael S. Shapiro. R. 238. At that time, Plaintiff complained of depression due to his back injury and stated that he could not find a job, could not sit or stand for very long, and had difficulty sleeping because of dreams about Vietnam. *Id.* Dr. Shapiro diagnosed a Major Depressive Disorder. *Id.* He notes that the severe depression was secondary to Plaintiff's 1989 back injury and that Plaintiff's limitations began in June 1989. R. 174, 199, 203.

Because the objective tests showed that neurotransmitter metabolites were at levels that indicate depression, Dr. Shapiro prescribed the antidepressant Prozac in April 1992. R. 237. December laboratory tests showed fluoxetine levels in a range that Dr. Shapiro described as being in the low therapeutic range. R. 235.

On April 27, 1992, Dr. Shapiro noted that Plaintiff had started, but neglected his studies for, an advanced level correspondence course, had remodeled his garage, but was otherwise inactive and had gained weight. R. 237. In May, however, Plaintiff purchased lawn mowers to work on and continued to neglect the correspondence course. *Id.* Dr. Shapiro noted that by June 29, 1992, Plaintiff had been busy fixing lawn mowers and had no time to rest. *Id.* By October 1992, Plaintiff had sold a lawn mower and a couple of snow mobiles. R. 236.

Despite his activity fixing lawn mowers, Plaintiff's psychological condition seemed to have worsened because Dr. Shapiro's monthly session notes indicate that the Prozac dosages had increased between April and December 1992. R. 235-37. The notes record Plaintiff as being angry, having trouble relating to others, and being unable to sleep. R. 231-37. While seeing Dr. Shapiro, Plaintiff had physical complaints and financial concerns. *Id.*

The results of a mental status examination performed on September 5, 1992, showed that Plaintiff had a flat affect, was dysphoric, and had constricted speech. R. 175. Plaintiff's daily activities were "very limited," he had a "constricted filed of interest," he was withdrawn, and he was more irritable with his wife. R. 174-75. Antidepressant therapy produced only mild improvement. R. 176. Plaintiff had limited ability to do work-related activities because of his poor physical and mental states. *Id.*

In late December 1992, Dr. Shapiro completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Evaluation. R. 200-11, 221-29. He noted that Plaintiff had a personality disorder and was depressed, anxious, socially dysfunctional, and deficient in his concentration, persistence, and pace. R. 206-08, 210, 224-26, 228. At work or in a work-like setting, Plaintiff had repeated episodes of deterioration or decompensation. R. 210, 228. Plaintiff's ability to handle the psychological requirements of work were generally moderately to markedly restricted, and Dr. Shapiro believed that Plaintiff could not handle pressure because he became angry and explosive. R. 201-02.

13

## D.    THE ALJ'S DECISION

The ALJ's decision identified the issue as whether Plaintiff was entitled to DIB during the period from June 30, 1989, until March 29, 1992. R. 548. The decision focused on Plaintiff's mental state. R. 549. As a threshold matter, the ALJ addressed Plaintiff's work repairing small machinery. *Id.* He found Plaintiff's "self-employment" to be "particularly helpful in assessing his physical and mental state, given the size and diversity of the machinery repaired." R. 552. Contrary to Plaintiff's testimony, which the ALJ said downplayed the work, and Dr. Shapiro's records, the ALJ found the work to be significant, given reports that between May 1992 and December 1993 Plaintiff purchased lawn mowers to repair, busily fixed the mowers without time to rest, sold a mower and a couple snow mobiles, and considered selling the business. R. 549. The ALJ noted that Plaintiff continued this work activity while working at a convenience store in 1997, was working thirty-four hours a week by January 21, 1998, and was doing "fix up" jobs in July 1998. *Id.*

Although there exist no earnings between 1989 and 1996, the ALJ pointed to Plaintiff's earnings for 1987 to 1989 and 1996, the lack of medical evidence, and Plaintiff's "other activities," including starting an advance level correspondence course and remodeling his garage in April 1992, to conclude that Plaintiff did not have a severe mental impairment or physical limitations that would preclude work existing in significant numbers in the economy. R. 550, 552. The ALJ rejected Dr. Feinberg's assessment that Plaintiff met Listing 1.04c, stating that the evidence was clear that Plaintiff could ambulate effectively,

14

which was contrary to the requirements of the Listing. R. 550. He therefore found Dr. Feinberg's assessment not to be supported by the medical evidence. *Id.* The ALJ also rejected the notion that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently because Plaintiff repaired machinery weighing in excess of twenty pounds. R. 551.

Although dismissing Dr. Shapiro's opinion that Plaintiff's 1989 back injury triggered his problems because it lacks support in the treatment records, the ALJ stated that even if Dr. Shapiro's assessment was correct it does not follow that the impairment was severe. *Id.* As contradictory evidence, the ALJ pointed to the fact that, prior to seeing Dr. Shapiro, Plaintiff failed to pursue any treatment, including the free care available at the Veteran's Administration hospital. *Id.* Furthermore, the ALJ states that Plaintiff's failure to pursue treatment can not be justified by financial reasons because of the available free care, and thus the reason Plaintiff did not seek care was that his symptoms were "not of a severity to prompt him to do so." R. 552.

In furtherance of his findings, the ALJ pointed to the testimony of Dr. Zaloudek, stating that it was not supportive of an earlier onset date. R. 551. Additionally, the ALJ stated that the testimony of Dr. Dres pointed to no evidence of a mental impairment prior to March 30, 1992. *Id.* Claimant's own testimony in 1999 that Prozac reduces his depression, according to the ALJ, showed that treatment ameliorated his symptoms. *Id.*

Given the facts of the case, the ALJ concluded, Plaintiff was not disabled prior to March 29, 1992, and is not entitled to DIB for the time period at issue. R. 554. The ALJ found that Plaintiff's impairments in combination were severe but did not meet or equal a listing and that there was no proof that Plaintiff's limitations prevented him from performing work because his testimony and that of his wife was not credible, he performed other activities, and did not pursue treatment. R. 553. Consequently, the ALJ, upon reaching step five of the disability analysis, decided that Plaintiff could not perform a full range of light work but could have performed jobs existing in significant numbers in the economy. *Id.*

## III. LEGAL STANDARDS

### A. STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if the "reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

A reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence to support the findings. *Id.*; *Scivally*, 966 F.2d at 1075. The reviewing court has the power to enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.   DISABILITY STANDARD

An individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, a disabled individual is eligible for DIB benefits only if that individual is under a disability. *Id.* § 423(a). An individual is under a disability if she is unable to do her previous

work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if the ALJ, at any step of the process, finds that the claimant is not disabled. *Id.* The ALJ must inquire: (1) whether the claimant is working in any substantial gainful activity, (2) whether the claimant's impairment is severe, (3) whether the impairments meet or equal a listed impairment in 20 C.F.R., pt. 404, subpt. P, Appendix 1, (4) whether the claimant is able to perform his past relevant work, and (5) whether the claimant's age, education, and past relevant work experience in reference to his residual functional capacity, enables him to do other work. *Id.* § 404.1520(a)(4)(i)-(v). In order to determine whether the claimant can perform any past relevant work (step 4), the ALJ assesses the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(e). The RFC is defined as the most that an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. *Id.* § 404.1545. The burden of proof is on the claimant through step four; the burden shifts to the Commissioner only at step five. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). At step five of the disability analysis, the Commissioner has the burden of proving that Plaintiff has the ability to engage in other work existing in significant numbers in the national economy. *Young v. Sec'y of Health & Human Servs.,* 957 F.2d 386, 389 (7th Cir.1992).

## III. DISCUSSION

The ball game is into extra innings. It is the bottom of the eleventh (year), there are two outs, and the Commissioner is at bat. Like the Mighty Casey, the Commissioner has struck out. Strike one came in 1996 as the Commissioner fouled off a pitch when the Seventh Circuit remanded the case for further proceedings. Strike two came in 2002 when, by agreement of the parties, this Court remanded the case for a second time, with specific instructions for the ALJ to follow. The Commissioner was caught looking as strike three whizzed by when she adopted as her final decision the ALJ's decision that failed to follow the agreed upon instructions given by this Court. The contest is now over. Judgment is entered in favor of Plaintiff with an onset date of October 25, 1989, the Commissioner's motion to remand is denied, and Plaintiff is awarded attorneys fees pursuant to the EAJA.

## A.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED

By filing a motion to remand in response to Plaintiff's motion for summary judgment, the Commissioner has conceded that there is no substantial evidence to support the ALJ's decision. The Commissioner argues that the lack of substantial evidence can be remedied by allowing the ALJ to better articulate his finding of not disabled. This Court, however, finds not only that the ALJ's decision fails to properly articulate its reasons but also that the Commissioner has improperly determined the onset date of Plaintiff's disability.

In this case, the ALJ has determined that Plaintiff is disabled and entitled to DIB as of March 30, 1992. The issue, therefore, is whether the ALJ properly selected March 30,

19

1992, as opposed to any time between June 30, 1989 and March 29, 1992, as the proper onset date.

The onset date is critical, and "it is essential that the onset date be correctly established and supported by the evidence." S.S.R. 83-20, 1983 WL 31249, at *1 (S.S.A. 1983). Factors relevant to the determination of the onset date include the claimant's allegations, the claimant's work history, and the medical evidence. *Id.* To be significant, the claimant's allegations and the date of work stoppage must be consistent with the severity of the condition shown by the medical evidence. *Id.*

For disabilities of traumatic origin, the onset date is the day of the injury if death or the inability to engage in substantial gainful activity for at least twelve months is expected. *Id.* at *2. For disabilities of non-traumatic origin, the onset date must be determined by considering the claimant's allegations, the claimant's work history, and the medical and other evidence concerning the severity of the impairment. *Id.*

Although the onset date alleged by the claimant should be used if it is consistent with all the evidence available, there are instances in which inferences must be made as to whether the onset date precedes the first recorded medical examination. *Id.* at *3. Inferences must have a legitimate medical basis, and the ALJ should seek the assistance of a medical advisor. *Id.* However, reasonable inferences about the progression of an impairment may be based on information obtained from the claimant's family members, friends, and employers. *Id.*

The ALJ must give convincing rationale for the onset date selected. *Id.* That date should be set on the date when it is most reasonable to conclude that the impairment was severe enough to cause death or the inability to engage in substantial gainful activity for at least twelve months. *Id.*

In this case, the ALJ fails to give convincing rationale for the onset date selected and has not selected the most reasonable date. The ALJ relies on the vocational expert's determination that the combination of mental and physical impairments suffered by Plaintiff would prevent him from being employable and finds that Plaintiff lacked the requisite mental impairment that would cause him to be unemployable from June 30, 1989 to March 29, 1992. Consequently, the ALJ selected as Plaintiff's onset date March 30, 1992, the date of Plaintiff's first visit to his psychiatrist. Essentially, the Commissioner argues that Plaintiff's onset date is March 30, 1992, because that is the date that Plaintiff was diagnosed with Major Depression Disorder, no other earlier date is consistent with the medical evidence, and other testimonial evidence does not support any inferences needed to set an earlier onset date.

This Court finds that the onset date selected by the ALJ is entirely arbitrary, given the record. Moreover, the ALJ's findings are tainted by irrelevant evidence and illogical reasoning. This Court will discuss the errors committed by the ALJ and will discuss why there are three possible onset dates prior to March 30, 1992, from which the ALJ should have chosen.

### 1. Errors Committed by the ALJ

### a. The ALJ Arbitrarily Selected the Onset Date

In *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987), the Seventh Circuit declared that the critical date is the onset date, not the date of diagnosis. In *Lichter*, the claimant was involved in a serious automobile accident in 1981 and suffered severe physical injuries that caused him to stop working. *Id.* at 431. In 1983, the claimant was diagnosed with a severe mental impairment by a psychologist. *Id.* at 436. The psychologist's report did not expressly state a date on which the claimant first became mentally impaired, but it did indicate that the mental impairment stemmed from the 1981 automobile accident and was of a traumatic origin. *Id.* Because of the lack of medical evidence to support 1981 as the onset date, the ALJ selected the diagnosis date, 1983, as the onset date. *Id.* at 435. Reasoning that the lack of medical evidence alone is not determinative of an onset date, the court found that the ALJ's determination of the onset date might have been different if the ALJ had applied SSR 83-20. *Id.* at 435-36. Under SSR 83-20, an ALJ is not permitted to rely on the first date of diagnosis solely because no earlier diagnosis date is available, but rather an ALJ must obtain medical and non-medical evidence. *Id.* at 435.

In this case, there is no medical evidence available to determine whether Plaintiff was severely mentally impaired from June 30, 1989 to March 29, 1992, and the ALJ did obtain non-medial evidence in the form of testimony by Plaintiff and his wife. However, the ALJ

discredited their testimony. Nonetheless, the ALJ's selection of March 30, 1992, as the onset date rests solely upon the arbitrary reason that it was the diagnosis date.

**b.     The ALJ's Credibility Determinations Are Patently Wrong**

A reviewing court can not reverse an ALJ's credibility determination unless it is patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). In this case, the ALJ's credibility determinations are patently wrong because the supporting evidence upon which he relies is irrelevant to the time period at issue. Additionally, the ALJ ignored relevant information regarding Plaintiff's failure to seek treatment.

The ALJ explicitly states that the period at issue is June 30, 1989 to March 29, 1992. R. 553. Inexplicably, he focuses heavily and repeatedly upon Plaintiff's activity repairing light machinery between May 1992 and December 1993 as "particularly helpful" evidence in assessing Plaintiff's physical and mental state. R. 549, 552. The ALJ can not consider evidence of work done in mid-1992 to late 1993 to determine Plaintiff's physical and mental state from mid-1989 to early 1992; such evidence is simply outside the period at issue. The Seventh Circuit made this restriction abundantly clear when it remanded this case for the first time, stating that it was impermissible to rely upon Plaintiff's efforts at engaging in a small machine repair/resale business to show an inconsistency with a diagnosis of major depression and limited functional abilities. *Rohan*, 98 F.3d at 970. Also irrelevant for the same reason

are the correspondence course and garage remodeling project in April 1992 that the ALJ relies upon. R. 552. The ALJ improperly uses such irrelevant evidence to discredit the testimony provided by Plaintiff and his wife. R. 553.

Furthermore, the ALJ also dismisses the notion that Plaintiff can lift up to twenty pounds occasionally and ten pounds frequently because Plaintiff repaired machinery weighing in excess of twenty pounds. R. 551. How the ALJ came to this conclusion is unclear because there is no evidence that Plaintiff ever lifted the machinery he repaired. Quite to the contrary, Plaintiff testified that he either sits or lays down in order to repair the machinery. R. 392-93, 605-07. Sitting or laying down to repair machinery indicates that Plaintiff never lifted it. Furthermore, he never testified that he lifted the machinery but rather testified that he could not even pick up anything that he dropped on the ground. R. 641. Consequently, the ALJ based his decision upon conjecture.

In addition to using Plaintiff's activities as discrediting evidence, the ALJ discredits Plaintiff and his wife because Plaintiff failed to pursue treatment for a period of time and failed to take advantage of free services at the Veterans Administration hospital. *Id.* However, failure to seek treatment is not necessarily detrimental to Plaintiff's disability claim. *See Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994). Indeed, in this case, Plaintiff gave good reasons for not pursuing treatment. He states that he received misinformation from the Veterans Administration hospital, which told him that he could be treated only for war-related injuries. R. 280, 386. Furthermore, he could not afford

24

treatment until he began receiving public aid in 1993. R. 278. During that time, however, he continued to rest and to take over-the-counter medicine. R. 277, 291. The ALJ errered in failing to consider this evidence.

### c. The ALJ Mischaracterized the Testimony of the Medical Experts

The ALJ also erred by relying on the testimonies of Dr. Zaloudek and Dr. Dres as evidence that the onset date could not be earlier than the diagnosis date. The ALJ states that Dr. Zaloudek was not supportive of an earlier onset date and that the Dr. Dres was "hardly persuasive" because he testified that there was no evidence of a mental impairment prior to the diagnosis date and that Plaintiff only could have had a mental impairment at that time. R. 551. These are mischaracterizations of the testimony provided. In reality, Dr. Zaloudek provided no information regarding Plaintiff's condition between June 1989 and March 1992 because the lack of notes pertaining to that period precluded comment. R. 419, 421. Dr. Dres testified that Plaintiff's psychological symptoms were progressive and that, based upon the medical evidence and the testimony, Plaintiff's mental impairment likely began on October 25, 1989. R. 647-50. This testimony deserves greater weight, given the consistent testimony by Plaintiff and his wife, which is discussed below.

As a result of these errors, this Court finds that there is no substantial evidence to support the ALJ's decision. The ALJ did not build a logical bridge between the facts and his conclusions. He did not properly select an onset date.

## 2. Selection of Disability Onset Date Prior to the Diagnosis Date

In this case, there are three reasonably determinable onset dates prior to the diagnosis date. Pursuant to SSR 83-20, the starting point for determining an onset date is claimant's alleged onset date. *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991) (citing SSR 83-20). That date is adjusted by considering the claimant's work history, and then adjusted further in light of medical reports describing examinations or treatment of the claimant. *Id.* Medical evidence establishing the precise onset date of a slowly progressing impairment, however, often is unavailable. *Id.* In such cases, the onset date must be inferred based upon the medical and other evidence that describe the history and symptomatology of the impairment. *Id.*

The starting point in this case is June 30, 1989, Plaintiff's alleged onset date. That date requires no adjustment due to work history because it is the date Plaintiff ceased working, and he did not work again until 1996. Further adjustment is hampered because there is no medical evidence with respect to plaintiff's mental condition until March 30, 1992. However, Plaintiff's condition, according to Dr. Dres, is progressive, making it necessary to infer the onset date from other evidence. Therefore, the Court must consider lay evidence. SSR 83-20, 1983 WL 31249, at *3. To significantly impact the onset date determination, the lay evidence must not be contrary to the medical evidence of record. *Id.*

Both Plaintiff and Mrs. Rohan provide lay evidence that can assist in the determination of the onset date. Plaintiff claims that, as of 1989, his pain was severe enough

to cause his mental impairment. R. 644. His mood changed for the worse after the injury. R. 391, 614. In July 1989, he realized that he would never go back to his old lifestyle as a carpenter, and consequently began to gain weight, became irritated easily, and had difficulty remembering, concentrating, and sleeping. R. 115-16, 640, 642. By the time he first saw Dr. Shapiro, he had become suicidal, was very emotionally unstable, and had thoughts of guilt, worthlessness, and death. R. 644-45.

Mrs. Rohan substantiates Plaintiff's testimony, claiming that about three months after his injury, Plaintiff was irritable, very depressed, and moody and had difficulty concentrating, sleeping, and relating to others. R. 305-09, 390-91, 622. Plaintiff was paranoid and began talking about his experiences in Vietnam, which he had not mentioned in years. R. 309. His inability to do simple chores frustrated him, and he could not accomplish anything. R. 625-26. Mrs. Rohan had to give Plaintiff an ultimatum to see a psychiatrist because the situation had been severe and desperate for a long time, Plaintiff was very difficult to live with, and they were losing friends as a result of his attitude. R. 622-23.

The testimony of Plaintiff and his wife are remarkably consistent with each other, have remained consistent over the eleven years of this litigation, and are not contrary to the medical evidence. Indeed, three different doctors were able to determine that the onset date was prior to the diagnosis date. Such a determination is consistent with the nature of progressive impairments.

Dr. Shapiro opined that the onset date was June 30, 1989. R. 199, 203. Dr. Dres opined that the onset date was October 25, 1989. R. 647-50. Dr. Feinberg opined that the onset date was on or before November 20, 1990. R. 628-32. October 25, 1989, is the most reasonable and consistent onset date because of the progressive nature of the impairment and the fact that the lay evidence demonstrates that Plaintiff did not become severely depressed until three months after the June 1989 injury. However, because there are three dates from which to choose and not one supportable conclusion, such a determination is usually left up to the ALJ. Therefore, the only question is whether to remand for further proceedings or to automatically award benefits.

## B. COMMISSIONER'S MOTION TO REMAND IS DENIED

Generally, when an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is the appropriate remedy. *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). An award of benefits is appropriate only if all factual issues have been resolved and the "record can yield but one supportable conclusion." *Id.* In such cases, further administrative proceedings would serve no useful purpose but would only delay the receipt of benefits. *Parks v. Sullivan*, 766 F. Supp. 627, 638 (N.D. Ill. 1991). Therefore, the proper remedy for errors is not an automatic award of benefits but rather a remand for further proceedings. *Gotz v. Barnhart*, 207 F. Supp. 2d 886, 903 (E.D. Wis. 2002).

However, the Commissioner does not receive "endless opportunities to get it right." *Seavey v. Barnhart*, 276 F.3d 1, 13 (1st Cir. 2001); *Miller v. Chater*, 99 F.3d 972, 978 (10th

Cir. 1996). A court may step in and award DIB when "the delay involved in repeated remands has become unconscionable," *Seavey*, 276 F.3d at 13, or the agency has displayed "obduracy" in complying with the law of the case, *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998).

For example, the court in *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), reversed the district court's decision to sustain the Commissioner's denial of DIB and automatically awarded the claimant DIB because it found ten years of delay to be unconscionable. After determining that the ALJ improperly treated and failed to credit the opinions of the treating and examining physicians, the court in *Morales* mulled the question of whether to remand the case to the Commissioner or to reverse the decision and award benefits. *Id.* at 317-18, 320. While pondering the issue, the court noted that the ten years of litigation included two hearings before an ALJ, two petitions to the Appeals Council, two appeals to the district court, one concession by the Commissioner that an ALJ decision was inadequate, and one appeal to the court of appeals. *Id.* at 312, 320. Furthermore, the delays were caused by deficiencies that were not attributable to any error of the claimant. *Id.* at 320. Consequently, the court automatically awarded benefits without remanding the case to the Commissioner for further proceedings. *Id.*

Similarly, the court in *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998), automatically awarded DIB to the claimant because of the "obduracy" evidenced by the Social Security Administration. In *Wilder*, the court, which had previously remanded the case, reviewed the

29

district court's decision to affirm the Commissioner's denial of benefits, found no reasoned basis for the denial, and reversed the district court's ruling. *Id.* at 804. The court did not find that the record yielded one supportable conclusion, but rather found that the new evidence "left the case exactly where it was the last time." *Id.* Nonetheless, the court refused to remand the case to the Commissioner for further proceedings. *Id.* at 801. In reaching its decision, the court pointed to the actions of the agency. *Id.* at 804. The ALJ's opinion, the court stated, was no more reasoned than the one that resulted in the remand, contained misstatements of evidence, ignored the instructions from the court's previous remand order, and relied on evidence not in the record. *Id.* at 802-04. In order "to bring the charade to an end," the court ordered the Commissioner to award the claimant the benefits for which she had applied. *Id.* at 801.

Likewise, this case warrants an automatic award of DIB to Plaintiff because there has been both unconscionable delay and obduracy. During the eleven years of litigation in this case, there have been three hearings before an ALJ, three petitions to the Appeals Council, three appeals to the district court, two concessions by the Commissioner that ALJ decisions were inadequate, and one appeal to the court of appeals. Furthermore, the delays in this case were caused by deficiencies that were not attributable to Plaintiff's error. Any remand in this case would require the case to go to a third ALJ, which would delay this case for another year or more because the ALJ would have to review the 655 page record and possibly conduct a new hearing in order to make credibility determinations. Such delay is unconscionable.

Plaintiff need not "wait with the patience of Job for yet another remand." *Smith v. Califano*, 637 F.2d 968, 973 n.1 (3d Cir. 1984). "Where further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits, reversal is especially appropriate." *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).

Given the record in this case, further proceedings likely will prolong Plaintiff's ultimate receipt of benefits. *See Donahue v. Massanari*, 166 F. Supp. 2d 1143, 1150 (E.D. Mich. 2001) (awarding automatic benefits on a record similar to the one in this case). Plaintiff is in his mid-fifties, had an extensive work history, and earned good wages. His drive to attempt to repair small machinery and the maximum effort put forth in a work hardening program, apparently to his detriment, demonstrate his strong desire to work and his inability to do so. Moreover, Plaintiff has met his burden of proving his *prima facie* case because the burden of proof shifted to the Commissioner when the ALJ reached the fifth step of the disability analysis and the record is fully developed with respect to the period at issue. *See Allen v. Bowen*, 881 F.2d 37 (3d Cir. 1989) (granting an automatic award where a *prima facie* case of entitlement was established, the record was fully developed, and there was no good cause for SSA's failure to adduce all relevant evidence). The Commissioner has not met her burden after eleven years, having failed to adduce substantial relevant evidence to deny Plaintiff benefits on three separate occasions. Now she requests a fourth opportunity

to cure her defects. Even if it were possible for her to develop such a cure, it would be "grossly unfair to give her another chance to do so under these circumstances." *Podedworny*, 745 F.2d at 222.

The unconscionable delay in this case alone is sufficient to reverse this case and award Plaintiff benefits. However, it is the obduracy in this case that most disturbs the Court.

The obduracy in this case arises from the actions of the SSA throughout the eleven years of litigation. For instance, the errors committed by the first ALJ were so egregious that the Seventh Circuit not only remanded the case but also recommended replacing the ALJ. Despite taking the recommendation, the Commissioner had to concede twice that the new ALJ erred. The first concession resulted in a remand for which this Court gave specific instructions. The need for a second concession convinces this Court that the agency persists in its wrongdoing and refuses to get it right because it persistently fails to follow the instructions of this Court and the Court of Appeals.

The Commissioner's motion for remand proposes that the ALJ will address the opinion of Dr. Shapiro and the testimony of Plaintiff's wife, and consult a medical expert. These are the precise instructions this Court gave on remand over two years ago. The ALJ failed to follow the instructions then, and the Court is not convinced that the ALJ will follow the instructions now. It is clear that the ALJ ignored the instructions on remand and consequently reaches a decision that, like the ALJ's decision in *Wilder*, is no more reasoned than the one that resulted in the second remand of this case. As a result, the Commissioner

has run out of chances. The Court does not understand why it takes Plaintiff's twenty-nine page summary judgment motion to make the Commissioner decide that now is the time to try to get it right.

Before Plaintiff filed his motion, the Appeals Council had three chances to get it right and failed. Considering that nearly 60% of social security cases decided by federal courts result in remands,[1] the Appeals Council should take more care in determining which cases to review. When a case, such as this one, is on its third hearing, the level of scrutiny by the Appeals Council should be heightened so that the parties can be sure that the SSA gets it right. Doing so saves both time and money. The Court recognizes that the resources of the SSA are strained by conducting nearly 500,000 hearings per year.[2] Nonetheless, that burden may be relieved a bit if the Appeals Council more carefully reviewed requests for appeals to determine whether an ALJ had committed error.

It is disturbing that the Council would not take jurisdiction over this case even after Plaintiff submitted a memorandum of exceptions that detailed the numerous errors committed by the ALJ. When a memorandum of exceptions legitimately raises issues such as the

---

[1] According to the most recent data published by the Social Security Administration, in fiscal year 2001, 11,729 cases were decided by federal courts. Of those, 6,754 cases, or 57.6%, were remanded to the Commissioner. Table 2.F10–Number of Civil Litigation Cases, Fiscal Year 2001, Social Security Bull., Annual Statistical Supp., 2002 (released December 2002), *available at* http://www.ssa.gov/policy/docs/statcomps/supplement/2002/2f8-2f11.pdf [hereinafter 2002 Stat. Supp.].

[2] Table 2.F9–Number of Hearing Receipts, Dispositions, and End-of-Year Pending Cases, Fiscal Years 2001-2002, 2002 Stat. Supp.

arbitrary choosing of an onset date, explicitly contrary medical evidence being ignored, and evidence being selectively mentioned in order to support the ALJ's decision, the Council should raise an eyebrow. Had the Appeals Council properly reviewed the case, the second remand would have been avoided.

Moreover, many of the same errors Plaintiff identified in the memorandum of exceptions are the same as the errors identified in his motion for summary judgment. Many of those errors are identifiable with a mere cursory glance at the ALJ's most recent decision.

The most glaring example of the errors apparent on the face of the decision is that the ALJ used Plaintiff's alleged self-employment to find Plaintiff ineligible for DIB. Besides being outside the time period in question, the evidence clearly was considered impermissible by the Seventh Circuit. *Rohan*, 98 F.3d at 970. That the Appeals Council could not realize that the ALJ in this case not only relied upon irrelevant evidence but also ignored the Seventh Circuit's instructions is unacceptable.

Furthermore, the Appeals Council failed to realize that the ALJ's reliance upon Plaintiff's failure to pursue treatment prior to seeing Dr. Shapiro as evidence of a lack of a severe impairment is suspect under the law. The Council also ignored the blatant ambiguity in the ALJ's decision regarding the amount of weight Plaintiff can lift.

Finally, this Court is dismayed that the Appeals Council would refuse to hear an appeal because the contentions raised by Plaintiff to the Appeals Council were repetitive of those previously submitted to the ALJ and addressed in the decision. R. 5. That reason

completely disregards the basic purpose of an appeal. Appeals are necessary to review the contentions raised to and the decisions made by a decision-maker in a lower forum. Indeed, a party waives on appeal those issues that are not raised before the ALJ. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Therefore, the reason given by the Appeals Council for denying review is unacceptable.

This Court finds that obduracy arises from the actions of the SSA throughout the eleven-year existence of this case. The combination of the egregious errors committed by both ALJs, the refusal of the Appeals Council to review decisions replete with mistakes, and the rubber-stamp wielded by the Commissioner in this case shocks the conscience of the Court. Furthermore, the eleven-year delay in this case is unconscionable. The Commissioner's motion for remand is therefore denied. Because of the obduracy and the unconscionable delay that are the overtones of this case, as well as the Commissioner's failure to provide substantial evidence[3] to support her finding of not disabled, Plaintiff is

---

[3]The Commissioner argues that the obduracy doctrine requires this court to find that the record yields but one supportable conclusion before an award can be made automatically. The obduracy doctrine does not have such a requirement. *See Wilder*, 153 F.3d at 804 (granting an automatic reward even though the new evidence "left the case exactly where it was the last time" it was remanded). The doctrine arises when there is not substantial evidence to support a finding of not disabled and the only remaining question is whether to remand the case for further proceedings. If a court were to find that a record yielded but one supportable conclusion of disabled, then the question of obduracy would be moot because such a finding is sufficient grounds by itself to grant an automatic award. The obduracy doctrine permits a court to award a claimant disability insurance benefits in a case in which the persistent wrongdoing of the Social Security Administration shocks the conscience of the court. Indeed, other courts have granted automatic rewards under less offensive circumstances (some of which exist in this case). *See, e.g., Donahue*, 166 F. Supp. 2d at 1151 (negligence, seven years delay, and no substantial evidence); *Nielson v. Sullivan*, 992 F.2d 1118 (10th Cir. 1993) (no substantial evidence and four years delay); *Ragland v. Shalala*, 992 F.2d 1056 (10th Cir. 1993) (patent failure to meet burden under step five of the disability analysis and

awarded disability insurance benefits for the period from October 25, 1989 to March 29, 1992.

## C. PLAINTIFF IS AWARDED ATTORNEY'S FEES PURSUANT TO THE EAJA

A prevailing party other than the United States is entitled to fees and other expenses incurred in a civil action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). Once a party establishes that it is the prevailing party, the burden shifts to the government to demonstrate that its litigation position was "substantially justified." *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996); *Dahlmeier v. Barnhart*, No. 02 C 50320, 2003 WL 22853266, at *1 (N.D. Ill. Dec. 2, 2003).

The Commissioner has no objection to Plaintiff's fee request under the EAJA because this Court has reversed the Commissioner's decision. There is no question as to substantial justification, and there exist no special circumstances that make the award unjust. Plaintiff's counsel submitted a time summary showing 18.85 hours of attorney services at $148.00 per hour, 14.55 hours of paralegal services at $95.00 per hour, and $150.00 in costs, for a total of $4,322.50. These fees and costs are more than reasonable. In addition to the time submitted, Plaintiff's counsel estimates 10 hours of time for preparation of and argument on this motion, equaling $1,480.00 in fees. Therefore, the Court awards Plaintiff $5,802.50 in fees.

---

eight years delay); *Randall v. Sullivan*, 956 F.2d 105 (5th Cir. 1992) (reliance on improper evidence and eight years delay).

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court enters judgment for Plaintiff, denies the Commissioner's motion for remand, and awards Plaintiff $5,802.50 in fees pursuant to the Equal Access to Justice Act. The case is reversed and remanded to the Commissioner for the award of disability benefits to Plaintiff, Donald Rohan, for the period from October 25, 1989 to March 29, 1992.

SO ORDERED THIS 24TH DAY OF FEBRUARY, 2004.

_Morton Denlow_

MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Frederick J. Daley, Jr.
DALEY, DEBOFSKY & BRYANT
One N. LaSalle Street, Suite 3800
Chicago, IL 60602

Counsel for Plaintiff

Kathryn A. Beverly
SPECIAL ASSISTANT
UNITED STATES ATTORNEY
200 West Adams
30th Floor
Chicago, IL 60606

Counsel for Defendant